IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

CHRISTINA K. COMPTON,

             Plaintiff,

    Vs.                                  No. 14-4024-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

             Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Christina K. Compton's ("Compton") Title II application for disability insurance benefits and Title XVI application for supplemental security income under the Social Security Act ("Act"). She filed her applications in late 2010, alleging a disability beginning in the summer of 2010. (Dk. 8-16, pp. 3, 7).   After both applications were denied initially and on reconsideration, Compton requested an administrative hearing that was held on August 22, 2012. (Dk. 8-3, pp. 21-41). On October 15, 2012, the administrative law judge ("ALJ") issued his decision finding that Compton was not disabled as she remains "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Dk. 8-3, p. 20). With the Appeals Council's denial of the claimant's request for review, the ALJ's decision stands as the Commissioner's final decision. (Dk. 8-3, p. 2). The administrative record (Dk.

8, attachments) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 13, 16 and 18), the case is ripe for review and decision.

Born in 1960 and a high school graduate, Compton testified she last worked as a receptionist for Langston and Associates and in 2010 her employment ended because of panic attacks and a nervous breakdown. (Dk. 8-3, pp. 25, 28). On her disability report, Compton listed the following medical conditions as limiting her ability to work:   memory and concentration problems, anxiety, depression, post-traumatic stress disorder ("PTSD"), and panic attacks. (Dk. 8-7, p. 6). She testified to having daily panic attacks and described them as rendering her unable to see, hear and breathe and as causing her to shake all over. (Dk. 8-3, p. 29). She relies on deep breathing exercises to alleviate symptoms, but she does not take medication for the attacks. *Id.* She takes medication for depression and experiences the side effects of drowsiness and weight gain. *Id.* For her different conditions, she is seeing Dr. Schliep every two weeks and Dr. Jones every three months. *Id.*

On appeal, Compton argues the ALJ failed to apply the correct legal standards and to give proper weight to the medical opinions, failed to make credibility findings concerning her complaints and symptoms that are supported by substantial evidence, and failed to consider properly the third-party statement of her former employer. As a result of these errors, Compton concludes that the ALJ's assessment of her residual functional capacity ("RFC") is not supported by substantial evidence.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but

mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful

activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id.* Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ALJ'S DECISION

At step one, the ALJ found Compton to have not engaged in substantial gainful activity since July 23, 2010. At step two, the ALJ found

5

Compton to have the following severe impairments:    "anxiety disorder and depression." (Dk. 8-3, p. 12). At step three, the ALJ found that Compton's impairments, individually or in combination, did not equal the severity of the Listing of Impairments. *Id.* at 13.

Before moving to step four, the ALJ determined that Compton had the residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels but with some non-exertional limitations. The claimant's impairments allow her to do simple tasks but limit her to jobs that do not demand attention to details or complicated instructions or job tasks. She may work in proximity to others, but is limited to jobs that do not require close cooperation and interaction with co-workers, in that, she would work better in relative isolation. She is limited to occasional interaction and cooperation with the public. She retains the ability to maintain attention and concentration for two-hour periods at a time, adapt to changes in the workplace on a basic level, and accept supervision on a basic level.

(Dk. 8-3, pp. 14-15). At step four, the ALJ found that Compton was unable to perform her past relevant work as a receptionist or a bank teller. (*Id.* at p. 18). "Considering the claimant's age, education, work experience and residual functional capacity," and relying on the vocational expert's testimony that the Compton could perform the occupational requirements for a subassembler, hand bander, and folding machine operator, the ALJ concluded the claimant was not disabled through the date of his decision. *Id.* at p. 20.

**CREDIBILITY FINDINGS**

Compton argues the lack of substantial evidence to sustain the ALJ's credibility findings on her symptoms and limitations. It is the court's task

to determine "whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin,* 739 F.3d 569, 571 (10th Cir. 2014). The court looks at "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but . . . [i]t will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084.

Because the credibility findings "help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). An ALJ's adverse credibility finding, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

Before making his credibility finding, the ALJ summarized what Compton testified and reported as her disabling symptoms and limitations. (Dk. 8-3, p. 15). The ALJ then reviewed and summarized Dr. Corey Schliep's treatment records from April through September 2011 found in Exhibit 15F. He noted that Compton had been seen for anxiety and depression and reported

7

symptoms of "panic attacks, depression, anxiety, employment difficulties, financial difficulties, loneliness, low energy, poor self-esteem, and severe stress." *Id.* at 16. The ALJ observed that Dr. Schliep's diagnosis was "major depressive disorder and an anxiety disorder characterized as panic disorder." *Id.* From a mental status exam conducted by Dr. Schliep, the ALJ noted findings of a "depressed and anxious mood, mildly impaired memory, and a mild degree of conceptual disorganization."  *Id.* Finally, the ALJ summarized the consultative psychological evaluation with Dr. Magdalene Kovach taking note that Compton expressed not wanting to leave her house, having no friends or organizational affiliations, but having good relationships with her siblings. *Id.* The ALJ observed that Dr. Kovach had reported "normal attention and concentration, normal problem solving skills, and normal judgment," and he had diagnosed "depressive order and an anxiety disorder characterized as agoraphobia with social anxiety." *Id.*

Stating that he had carefully considered the evidence, the ALJ found that Compton's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible." (Dk. 8-3 p. 16). From the treatment records, the ALJ highlighted reports that her anxiety and depression were improving with treatment to the point that she reported in April of 2011 "an increased

8

ability to go out in public without having panic attacks, along with a 'significant decrease' in panic attacks and anticipatory anxiety attacks." *Id.* The ALJ noted that in June of 2011 Compton reported feeling "so much better," and she went on a "ten-day trip with her family, which is clearly inconsistent with allegations of being unable to leave the house." *Id.* The ALJ pointed out that Compton told her physician that the Valium had helped during her trip. The ALJ cited examples of Compton complaining of worsening symptoms but then admitting to improvement a short time later. The ALJ highlighted the inconsistency between the plaintiff's statement in an examination that she "wants a job" and her claim of being unable to work. *See Newbold v. Colvin,* 718 F.3d 1257, 1267 (10th Cir. 2013) (observing that claimant's interest in returning to work supported adverse credibility finding). The ALJ concluded:

> Similarly, in another examination she stated that she "wants a job," which likewise is inconsistent with allegations of being unable to work due to her impairments (Exhibit 22F, p. 3). In July of 2012, treatment records once again indicate that the claimant is stable and responding well to treatment (Exhibit 20F, p. 2)). The treatment records, by and large, indicate that the claimant's anxiety and depression are stable and consistently improving, particularly with her therapy and medications. For these reasons, the treatment records suggest that the claimant is not as limited as she alleges.

(Dk. 8-3, p. 17). An ALJ may factor into his credibility analysis a claimant's inconsistent "report[s of] what [she] was able and unable to do." *Lax,* 489 F.3d at 1089.

The ALJ next found that Compton's reported activities were

"inconsistent with her allegations" of disabling limitations. She testified that she had not left her home to shop for over five years, yet she told her treating physician of an incident that involved her shopping at Wal-mart. She testified that she had not been to church since December of 2011, yet she told her physician in February of 2012 that she was going to church. Despite testifying to difficulty with driving, she drove herself to the hearing and to various medical appointments. "All of these inconsistencies between the claimant's statements and her reported activities cast doubt on the veracity of her claims, which has a negative effect on the credibility of all of her allegations." (Dk. 8-3, p. 17). The ALJ has appropriately determined that Compton's credibility is undercut by the inconsistencies between her actual activities and her general claim of being unable to do them. *See Newbold v. Colvin*, 718 F.3d at 1267 (claimant's allegations of debilitating fatigue and widespread pain inconsistent with daily activities).

Compton argues the ALJ's credibility findings are no more than conclusions based on speculation and unsupported by substantial evidence of record. The court's prior discussion plainly evidences that the ALJ's findings are hardly speculative but rest upon substantial evidence of record. The plaintiff disputes the ALJ's reliance on reported instances of improvement, because they are not proof that she could perform substantial gainful work. The plaintiff's argument is wide of the mark and her citation of *Morales v. Apfel*,

10

225 F.3d 310 (3rd Cir. 2000) is inapplicable, because the ALJ cited and used this evidence primarily to discount the plaintiff's credibility. The plaintiff complains about the ALJ singling out her ten-day trip with her family and her successful use of medication on it. The plaintiff asks the court to characterize this as a sporadic activity and to discount it as not probative evidence against her disability. Alternatively, the plaintiff contends the ALJ should have inquired over what difficulties and activities the plaintiff may have experienced on her family trip. Again, the ALJ used this evidence of the trip to discount plaintiff's credibility, and such evidence can be relevant for that purpose without also being unquestionable proof that the plaintiff is able to work. The plaintiff's alternative argument fails to show how the ALJ was aware of material evidence and failed to develop the record on it. There is nothing to suggest here that the ALJ failed to develop an adequate record at "the disability hearing consistent with the issues raised." *Henrie v. United States Dept. of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993).   When a claimant is represented by counsel, as here, the ALJ may usually rely on counsel to adequately present the evidence, and "to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (internal quotation marks and citation omitted). Finally, the plaintiff argues the court should draw a different inference from the plaintiff's expressed desire to work. The court cannot substitute its judgment for the ALJ.

11

The evidence of record sustains the ALJ's credibility findings here especially given the deference afforded the ALJ as being "in the best position to observe the demeanor of witnesses at a hearing, and, as a result, the ALJ's credibility findings deserve special deference." *Lax*, 489 F.3d at 1089 (internal quotation marks and citation omitted). In suggesting other inferences from the evidence and in arguing against its weight, Compton essentially is asking the court to reweigh the evidence, which it cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir.2007) ("We review only the sufficiency of the evidence, not its weight."). The court is satisfied that substantial evidence sustains the ALJ's credibility findings. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

**WEIGHT OF MEDICAL OPINIONS**

Compton argues the ALJ erred in giving little weight to the opinion of the treating psychologist, Dr. Corey Schliep, and in giving significant weight to the stage agency psychological consultant, Dr. Carol Adams. As the record reflects, both Dr. Adams and the ALJ, in turn, gave some weight also to the opinion of Dr. Magdalene Kovach who had examined Compton. (Dk. 8-3, p. 17 citing Ex. 4A and 17F referring to Dr. Kovach). The ALJ found that Dr. Adams'

12

opinion that Compton could do "simple work . . . with limited contact with the public and co-workers" was "consistent with the record as a whole." (Dk. 8-3, p. 17). The ALJ referred to Compton's reported daily living activities and the records showing "she has responded well with regards to both her depression and anxiety." *Id.* Recorded in Dr. Adams' evaluation of the evidence in exhibit 4A is Dr. Kovach's opinion on Compton that, she "is able to carry out simple instructions. Orientation, attention and concentration are normal. Memory functions appear good. Judgment is normal. Current motivation to work appears limited primarily by agoraphobia with social anxiety." (Dk. 8-4, p. 19). The ALJ did give "significant weight" to Dr. Adams' opinion on Compton being capable of performing simple work with limited contact. (Dk. 8-3, p. 17).

The ALJ next discussed the consultative psychological examination by Dr. Kovach and gave some weight to this opinion. He highlighted Dr. Kovach's opinion, "that the claimant can understand and carry out simple instructions" was supported by evidence of record. *Id.* He noted the observations of record were that the claimant is "able to maintain focus, has normal attention and concentration, and has normal problem solving skills and judgment." *Id.* In support of this, the ALJ cited not only Dr. Kovach's report but also records from the plaintiff's treating physician, Dr. Schliep. (Dk. 8-3, p. 17, citing Ex. 15F, p. 6). The ALJ concluded that "[t]his combined with the consistent improvement and increased activities exhibited by the claimant

13

over the past two years, suggest that the claimant's anxiety should not be a bar to obtaining employment." (Dk. 8-3, p. 17).

The ALJ next summarized the consultative psychological examination of Dr. George Hough conducted in April of 2011. Dr. Hough had opined that Compton was not presently capable of competitive employment, and the ALJ found this opinion to be unsupported by the record. But the ALJ did give some weight to Dr. Hough's opinion that Compton's condition was "likely a *transitory phenomenon,* and that in the future she would likely be able to engage in simple unskilled work at a competitive level." (Dk. 8-3, p. 18) (italics in original). The ALJ found this latter opinion consistent with the record and with Compton's continuing improvement. *Id.*

The ALJ next rejected the opinion of Dr. Robert H. Blum, a state agency psychological consultant. Blum had opined that Compton's mental impairments were severe but would not last 12 months. The ALJ found this opinion inconsistent with the evidence that her impairments were still causing some limitations but that they were improving over the last two years.

The ALJ concluded his discussion of the medical evidence by looking at the opinions of the claimant's treating mental health provider, Dr. Corey Schliep. He first acknowledged that the "opinions of treating sources are generally considered more reliable because of the duration of the treating relationship." (Dk. 8-3, p. 18). He observed that Compton had started seeing

14

Dr. Schliep in April of 2011 with appointments every two weeks but that the treatment records were "rather limited." *Id*. The ALJ found that "the medical evidence of record does not support Dr. Schliep's opinions" of significant limitations in almost every evaluated area. *Id*. The opinions are "starkly contrasted by the consistent improvement and stability reported by the claimant throughout the record." *Id*. The ALJ cited four exhibits in support of this conclusion. The ALJ also found that "Dr. Schliep's own treatment records do not support" his opinions. *Id*. While opining that Compton "had significant limitations in her ability to maintain attention, to understand very short, simple instructions, and to remember work-like procedures," Dr. Schliep still recorded mental status reports showing "the ability to attend and maintain focus, . . . no significant preoccupations of thought, and . . . only mild memory impairment." *Id*. Based on this "large disparity between the claimant's subjective complaints and the objective evidence," the ALJ wrote, "it appears that Dr. Schliep relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported." *Id*. The ALJ contrasted this with his prior finding that there were "good reasons for questioning the reliability of the claimant's subjective complaints." *Id*. Finally, the ALJ noted that Dr. Schliep's opinions evaluated categories "which are stated in functional terms, and are difficult to place in functional terms." *Id*. Based on "these reasons," the ALJ gave "little

weight" to Dr. Schliep's opinions.

The ALJ's duties include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "Medical opinions are statements from . . . medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

It is true that a "treating physician's opinion is given particular weight because of his unique perspective to the medical evidence." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). A treating physician's opinion, however, is not entitled to controlling weight "'if it is not well-supported by medically acceptable clinical and laboratory techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). A decision or finding that does not give the treating physician's opinion controlling weight does not mean that the physician's opinion was "rejected." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4). Instead, a treating physician's opinion is "still entitled to deference and subject to weighing under the relevant factors." *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014)

16

(citing 20 C.F.R. § 404.1527). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). An ALJ is not required to discuss each of these factors, but the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks and citations omitted). Nothing more is required than for the ALJ to provide "good reasons in his decision for the weight he gave to the treating sources' opinions." *Id.*

The court's summary of the ALJ's decision amply demonstrates that the ALJ has provided sufficiently specific, clear and good reasons for the weight given the respective medical opinions. In citing to and relying upon medical treatment records evidencing improvement in symptoms, the ALJ did not substitute his own medical opinion for that of the treating physician. The plaintiff maintains that other medical evidence of improvement does not weigh against Dr. Schliep's opinion, because improvement does not prove her capacity for gainful employment. This argument fails to recognize that the

17

evidence of improvement here is found within the treatment records just months after the plaintiff's disability onset date in July 2010 and after her last job ended. The ALJ certainly is entitled to weigh these medical opinions against the other evidence showing improvement and stability in the claimant's mental condition just months after she left the workplace. *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009). The ALJ highlighted a discrepancy between Dr. Schliep's opinion about claimant's significant limitations and his records on the claimant's mental status. This is an appropriate factor for evaluation. *See White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2002). The court has reviewed the medical record and disagrees that the ALJ's decision is little more than an effort to "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Keyes-Zachary*, 695 F.3d at 1166 (internal quotation marks and citation omitted). Lastly, rather than merely speculating that Dr. Schliep's opinion "relied quite heavily on" Compton's subjective complaints, the ALJ here articulated an evidentiary basis for his conclusion pointing to the discrepancy within Dr. Schliep's treatment records and the "large disparity" between the objective medical evidence and the subjective complaints. *See Barnhill-Stemley v. Colvin*, --- Fed. Appx. ---, 2015 WL 1840903 at *4 (10th Cir. Apr. 23, 2015) (citing *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004), *Raymond v. Asture*, 621 F.3d at 1272, *White*, 287 F.3d at 907-08). The

18

ALJ here has adequately explained his reasons for evaluating and discounting Dr. Schliep's opinion, and substantial evidence supports the ALJ's decision.

Finally, the plaintiff challenges the ALJ's stated reasons for giving significant weight to Dr. Adam's opinion. The consistency of the opinion with the entire record, including daily living activities, and specifically with other medical evidence is relevant to evaluating the weight of a medical opinion. *Watkins*, 350 F.3d at 1301. The plaintiff's arguments essentially ask the court to reweigh the evidence and the factors. But as stated before, the court is not to substitute its decision on two fairly conflicting choices, even if it would have made a different decision in the first instance. The ALJ's evaluation of the medical opinion evidence follows the correct legal standards and is sustained by substantial evidence.

**THIRD-PARTY STATEMENT OF BUD LANGSTON**

Compton contends the ALJ failed to consider properly the report from her former employer, Bud Langston, who is a vocational consultant. The ALJ mentions this report, "one of the claimant's former employers reported that the claimant required accommodations for one on one instruction and had difficulty handling multiple tasks (Exhibit 6E, p. 3)." (Dk. 8-3, p. 14). This mention occurred as part of the ALJ's finding that the claimant "has moderate difficulties in concentration, persistence and pace." *Id.*

With regard to opinion testimony or statements from lay

19

witnesses, the ALJ's decision must reflect that the opinion was considered, "but he need not specify the weight accorded to that opinion. Nonetheless, he may do so in explaining the rationale for his decision." *Cortes v. Colvin*, 2014 WL 1643493 (D. Kan. Apr. 23, 2014) (citations omitted). The ALJ's decision reflects that the opinion was considered and weighed as some evidence of limitations but not as support of the plaintiff's claim of disability. The ALJ's RFC limiting the plaintiff to simple work is consistent in large part with Langston's opinion. The court finds no error in the ALJ's consideration of Langston's report.

Finding no error in the ALJ's use of the proper legal standards and finding sufficient evidence from which a reasonable mind might accept as adequate to support the ALJ's determination of Compton's RFC and conclusion that she is not disabled, the court affirms the judgment of the Commissioner.

IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

Dated this 29th day of May, 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge